UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARMISTAR COLE,

    Petitioner,

v.                                                                      Case No. 8:15-cv-1910-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Armistar Cole, a Florida inmate, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Hillsborough County convictions (Dkt. 1). Respondent filed a response (Dkt. 8), and Cole filed a reply (Dkt. 13). Upon consideration, the petition will be DENIED.

**Procedural History**

Cole was convicted after a jury trial of armed robbery and armed kidnapping. (Dkt. 10, Ex. 1, Vol. I, pp. 90-91). The trial court sentenced him to life in prison on both charges. (Dkt. 10, Ex. 1, Vol. II, p. 250). The state appellate court affirmed Cole's conviction and sentence for armed robbery, but reversed his conviction for armed kidnapping and directed the trial court to enter a judgment for the lesser offense of false imprisonment with a firearm. *Cole v. State*, 942 So.2d 1010 (Fla. 2d DCA 2006). The trial court did so and sentenced Cole to five years in prison for that charge. (Dkt. 10, Ex. 7). Cole did not appeal.

Cole filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 10, Ex. 16). Following two remands from the state appellate court, the state postconviction court

denied relief on the claim that Cole raises in his federal habeas petition. (Dkt. 10, Exs. 31, 39, 40); *Cole v. State*, 89 So.3d 993 (Fla. 2d DCA 2012) and *Cole v. State*, 146 So.3d 1259 (Fla. 2d DCA 2014). The state appellate court *per curiam* affirmed this denial of relief. (Dkt. 10, Ex. 42).

**Facts**[1]

Theresa Zioerjen and her husband owned a Dollar Store. While Zioerjen was working there on the morning of July 8, 2003, Cole came in and purchased a bag of candy. Cole returned to the store a second time and bought a drink. When he entered the store a third time to buy candy, he placed money on the counter. As Zioerjen looked down to get change, Cole jumped over the counter and grabbed her by the neck. After a struggle, Cole pulled out a gun and took Zioerjen's purse. Cole also took a DVD player from behind the counter. He demanded that Zioerjen open a file cabinet, apparently believing it might contain money. After seeing that the file cabinet held only supplies, he pointed the gun at Zioerjen and told her to get in the bathroom and stay there.

A short time later, Zioerjen heard a chime indicating that Cole had exited. She left the bathroom and called 911. Police obtained videos from the store's security system that showed the robbery, Cole's two entrances into the store prior to the robbery, and the exterior area. A video from the parking lot showed a white pickup truck with several distinctive features, such as striping along the side and a toolbox in the bed.

Several months later, police developed Cole as a suspect when he was pulled over driving a truck similar to the one seen in the surveillance video. Detective Jimmy Hinkle made a photopack containing Cole's photo and showed it to Zioerjen. She identified Cole as the perpetrator. After police arrested Cole, he called his wife from jail and requested that she remove a DVD player from

---

[1] The factual summary is based on the trial transcript and appellate briefs.

their home. Police later recovered the DVD player from an acquaintance of the Coles. The DVD player was the same model as the DVD player taken from the store, and a remote control provided by Zioerjen worked on it.

**Standard Of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of Cole's postconviction relief in *per curiam* decisions. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Cole claims ineffective assistance of trial counsel. His claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Cole must demonstrate that his counsel performed deficiently in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Cole must also show that he suffered prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because federal habeas review is "doubly" deferential to counsel's performance and the state court's decision. *Richter*, 562 U.S. at 105.

## Discussion

Ground One

Cole alleges that trial counsel was ineffective in failing to adequately cross-examine Detective Hinkle and Theresa Zioerjen. He identifies three topics about which he believes counsel should have further cross-examined Detective Hinkle: 1) Detective Hinkle's alleged failure to identify Cole as the suspect seen in the video; 2) Detective Hinkle's alleged failure to investigate another suspect; and 3) Detective Hinkle's failure to identify a gun in the video of the robbery. He also claims that counsel was ineffective in not asking Zioerjen to identify a gun in the video.

On remand from the state appellate court, the state postconviction court denied Cole's claims, finding that he could not demonstrate prejudice as a result of counsel's performance:

> Afer reviewing the allegations, the *Cole* opinion, the court file, and the record, the Court finds based on the overwhelming evidence of Defendant's guilt presented at trial, including the victim's identification of Defendant as the perpetrator of the crime, the brutal surveillance video of the robbery, and the recorded jail calls from Defendant to his wife advising her to get rid of a DVD player, which was an item stolen during the robbery, Defendant cannot demonstrate that if his counsel would have impeached or cross-examined Detective Hinkle or the victim as alleged, there is a reasonable probability that the outcome of the trial proceedings would have been different. As such, no relief is warranted.

(Dkt. 10, Ex. 39, p. 4) (court's record citations omitted).

1. <u>Detective Hinkle's Alleged Failure To Identify Cole</u>

The State presented significant evidence of Cole's identity. Zioerjen testified that Cole came into the store three times the morning of the robbery, and that nothing disguised or covered his face. (Dkt. 10, Ex. 1, Supp. III, pp. 201-03). She also testified that she was in close proximity to Cole. (*Id.*, pp. 203-06, 227). Zioerjen recalled giving police a description of Cole, and testified that she was certain in her photo pack identification of Cole. (*Id.*, pp. 211-13). She stated that she knew "from the minute [she] looked at the pictures who it was." (*Id.*, p. 213). When she identified Cole in the courtroom, she said that she was sure he was the person who robbed her. (*Id.*, pp. 222-23). Additionally, after Cole told his wife to dispose of a DVD player, police recovered from the Coles' acquaintance a DVD player of the same model taken from the store, which worked with a remote control provided by Zioerjen. (Dkt. 10, Ex. 1, Supp. II, pp. 139-46).

Cole identifies four matters that he believes are relevant to identity and should have been addressed during counsel's cross-examination of Detective Hinkle. Each is discussed below. However, as the state court found, Cole cannot show prejudice under *Strickland*.[2]

  *A. Whether Detective Hinkle Spoke To Zioerjen At The Scene*

Detective Hinkle testified at trial that he did not believe he spoke to Zioerjen when he

---

[2] Cole also states, as he did in his postconviction motion, that counsel failed to cross-examine Zioerjen about her prior statement that she had viewed the video several times before identifying Cole from the photo pack and that she showed the video to her family. It appears that Cole raises this information only to show "a consistent pattern in trial counsel's deficiency during cross-examination." (Dkt. 1, p. 9). However, the state court appeared to construe his assertion as a claim for relief and, as addressed, denied all of Cole's claims on *Strickland*'s prejudice prong. To the extent Cole intends to argue that counsel was ineffective in failing to cross-examine Zioerjen concerning this information, he has not shown entitlement to relief. Counsel elicited Zioerjen's testimony that she had seen the video six or seven times. (Dkt. 10, Ex. 1, Supp. III, p. 226). But she also stated that her testimony was based on her memory of the events and not on the video. (*Id.*, p. 227). In light of the entirety of Zioerjen's testimony and the other evidence of identity, Cole does not show prejudice as a result of counsel's failure to clarify how many times she saw the video prior to viewing the photo pack. Nor does he establish the significance of her showing the video to her family. Cole does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim.

responded to the store because she had been taken to the hospital. (Dkt. 10, Ex. 1, Supp. II, pp. 108-09). Cole claims that counsel failed to impeach Detective Hinkle with his inconsistent deposition testimony that he did talk to Zioerjen at the store. However, Cole does not explain the significance of the alleged inconsistency between Detective Hinkle's deposition and trial testimonies. Given the inconsequential nature of the alleged discrepancy, and in light of the significant evidence of Cole's identity, Cole cannot show that he suffered prejudice as a result of counsel's performance.

   *B.*   *The Brand Of The White Truck*

The evidence presented at trial shows that Detective Hinkle initially believed that the white pickup truck seen in the surveillance video may have been a Toyota, but that it was later determined to be a Nissan. On cross-examination, Detective Hinkle testified that when he and other officers watched the video, he could not tell the truck's brand but "would have said Toyota because [he] had owned one." (*Id.*, p. 150). He stated that even after another officer identified the truck as a Nissan Frontier based on the video, he was not positive of the truck's brand. (*Id.*, pp. 150-51). Cole claims that counsel was ineffective in not asking Detective Hinkle how, specifically, police concluded the truck was a Nissan. But Cole does not explain what information Detective Hinkle would have testified to or how it would have benefitted the defense. Considering the vagueness of Cole's claim and the evidence of identity described above, Cole does not establish a reasonable probability that the outcome would have been different had counsel inquired further about how police determined the truck's brand.

   *C.*   *Comparison Of T-Shirts From Cole's House To The Perpetrator's T-Shirt*

Detective Hinkle testified that he believed that two T-shirts found in Cole's home matched the T-shirt worn by the perpetrator in the video. Counsel made three objections to this testimony:

  Q. Were you able to locate any evidence inside of the defendant's home?

A. Yes.

Q. And what did you find?

A. Two T-shirts that matched the T-shirts worn by the suspect in the video during the robbery and the time that the suspect was in the store prior to the robbery.

Q. On the second - -

>[COUNSEL]: Again, I object to the comment that they matched. I think that's for the jury to decide.
>
>THE COURT: Overruled.

. . .

Q. Detective, if you could step down and briefly show why you thought these two particular T-shirts were of evidentiary value when you first collected them.

>[COUNSEL]: I object. They're in evidence already. The jury can summarize whatever benefit or value they are worth.
>
>THE COURT: No. You can address it on cross-examination.
>
>[COUNSEL]: Yes, sir.

. . .

Q. In addition to the one video there, there was an additional photo where he was in the store prior to that, too?

A. Yes. Again, I could actually see the temple that's in the center of this T-shirt which to me was a unique T-shirt that I had never seen before. Also in this video I could see the temple in the center of that. Even [in] the still photograph I could see the temple and when I looked at the video, it was clear to me it was the same image.

>[COUNSEL]: Again, I object to the officer giving us his opinion.
>
>THE COURT: Well, overruled.

(Dkt. 10, Ex. 1, Supp. II, pp. 124, 128, 129).

Cole claims that counsel was ineffective in failing to more specifically object that Detective Hinkle was improperly providing lay opinion testimony. Under § 90.701(2), Fla. Stat., a lay witness may give opinion testimony if his opinion "do[es] not require a special knowledge, skill, experience,

or training." Cole claims that Detective Hinkle's opinion about the T-shirt comparison did require such qualifications, and that counsel therefore also should have asked Detective Hinkle whether he had such knowledge, skill, experience, and training as to render him an expert. Cole also contends that counsel was ineffective in failing to question Detective Hinkle about the T-shirts on cross-examination. However, even if counsel had successfully excluded Detective Hinkle's opinion testimony, or had cross-examined him about the T-shirts, Cole does not show a reasonable probability that the outcome of trial would have been different considering the State's evidence of identity.[3]

### D.  *Still Photograph Taken From Surveillance Video*

Detective Hinkle testified that a still photograph taken from the surveillance video was lightened to enhance its quality. (Dkt. 10, Ex. 1, Supp. II, p. 127). Cole contends that counsel should have asked Detective Hinkle if he could positively identify Cole in the photograph after it was altered, and why he did not send the video to the Florida Department of Law Enforcement "for clarity." (Dkt. 1, p. 12). Cole suggests that in altering the photograph, Detective Hinkle "was conducting comparisons that required special knowledge, skill, experience, and training" and was giving opinion testimony. (*Id.*). But even assuming that 1) counsel could have excluded the altered photograph or Cole's testimony about it, or 2) Detective Hinkle would have said that he could not identify Cole from the enhanced photograph, Cole cannot show prejudice because the jury still heard of the overwhelming evidence of his identity unrelated to the photograph.

Cole has not shown prejudice as a result of counsel's alleged failure to address any of the

---

[3] In his reply, Cole argues that the trial court erred in admitting Detective Hinkle's testimony about the T-shirts. Cole may not bring a new claim in his reply. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[The court does] not address arguments raised for the first time in a pro se litigant's reply brief. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). Timson, thus, has abandoned this issue."). Further, because the claim alleges a violation of state law, it is not cognizable on federal habeas review. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

above matters relevant to establishing Cole's identity as the perpetrator. He has not shown that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact.

2.  Detective Hinkle's Alleged Failure To Investigate Another Suspect

After a local news channel aired video of the robbery, police received a tip that the robber resembled a man named Ronnie Mata. On cross-examination, Detective Hinkle testified that he contacted Mata but determined that Mata was not a suspect:

> Q. Let me start out with a statement that you had made earlier and give you a chance to explain your answer, and then I'm gong to ask you about it. You had made a statement in response to a question from the prosecutor whether there were any leads developed from the video and you said, no.
>
> A. Yes, sir.
>
> Q. And I say to you that - - that's not true? That there were some leads? And I would like for you to have an opportunity to explain that answer.
>
> A. Well, sir, in the context of that question, I meant leads that had any significance to me in the investigation at this time.
>
> Q. Okay. But there were leads that were developed from the Crime Stopper video, weren't there?
>
> A. Yes, sir, tips.
>
> Q. Tips. One was a man named Mata.
>
> A. Yes, sir.
>
> Q. That someone had called and said that Mr. Mata resembles the person in the video?
>
> A. Yes.
>
> Q. All right. And in canvassing the neighborhood, wasn't there also information concerning a man named Eddie Byrd?
>
> A. Yes, sir.

Q. Now, you discounted these. These leads you say didn't go anywhere?

A. Yes.

(Dkt. 10, Ex. 1, Supp. II, pp. 148-49).

On redirect, Detective Hinkle addressed his conclusion that Mata was not a suspect:

Q. Detective Hinkle, you said that you received a few other tips that the defense mentioned. Why did you discount these particular tips that you received?

A. One of them was a neighborhood survey conducted by patrol officers at the time of the robbery. That was the Mr. Byrd that was referred to, had described an individual leaving the store with a bag of candy who had come outside and sat down on the bench outside. Well, that immediately - - after knowing what occurred in the video, I knew the suspect that did the robbery did not go back outside and sit at the bench, so I discounted that.

The Crime Stoppers tip led me to Mr. Mata and his work address. I went to his work address. I wasn't able to talk to him at the work address, but I was able to get him to contact me. And I spoke with him, pulled up a photograph of him and looked at him and I did not feel that he could have been the suspect in this robbery.

Q. What were some - - were there any distinct features that would lead you to believe that he was not, in fact, the person who committed this robbery?

A. There were, but I don't remember specifically what the physical differences were. I just remember that after speaking with him and looking at his photograph, that he wouldn't be the person that had committed this robbery in the video.

(*Id.*, pp. 155-56).

Cole argues that counsel was ineffective in failing to adequately cross-examine Detective Hinkle about two matters concerning Mata. However, as the state court found, Cole has not established prejudice.

    A.    *Federal Indictment Of Mata*

Cole claims that Mata was the subject of a federal indictment for armed robbery. He claims that counsel must have known about the indictment because an investigator from the Public Defender's Office obtained a copy of the indictment. Therefore, Cole contends, counsel should have asked

Detective Hinkle about the indictment and brought up Detective Hinkle's allegedly false deposition testimony that Mata was not linked to any armed robberies. But because Cole fails to show that Mata's indictment in another case was relevant to whether Mata may have been a suspect in this case, and because of the substantial evidence of Cole's identity, Cole does not show a reasonable probability that the outcome of trial would have been different had counsel asked Detective Hinkle about the indictment. Accordingly, he has not demonstrated prejudice due to counsel's performance.

    *B.  Detective Hinkle's Failure To Meet Mata In Person*

  Cole claims that counsel should have asked Detective Hinkle how, considering he had never met Mata in person, he could be sure 1) that the photograph he looked at actually depicted Mata and 2) that Mata's stature was inconsistent with the person shown in the video. Cole does not establish prejudice as a result of counsel's failure to ask these questions. Detective Hinkle did not reference the stature of the suspect in the video in testifying about his decision not to purse Mata, and Cole only speculates that the photograph Detective Hinkle obtained might not have actually depicted Mata. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Accordingly, as the state court found, Cole cannot show that he was prejudiced by counsel's performance. Cole does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claims that counsel was ineffective in cross-examining Detective Hinkle about Mata.

3.  <u>Detective Hinkle's And The Victim's Failure To Identify A Gun In The Video</u>

  Cole argues that counsel was ineffective in not asking either Detective Hinkle or the victim to identify the gun in the video. He appears to contend that counsel's failure to do so deprived him

of an argument to support his motion for judgment of acquittal. The state court did not unreasonably deny this claim on *Strickland*'s prejudice prong. The State presented significant evidence showing that Cole used a gun. Zioerjen testified that Cole pulled out a gun during the robbery and pointed it at her. (Dkt. 10, Ex. 1, Supp. III, p. 204, 207). She described it as a small silver gun about the size of Cole's hand. (*Id.*, p. 205). Zioerjen had some familiarity with guns because she had taken a self-defense course during which she learned to fire a gun, and she testified that the gun appeared real to her. (*Id.*). She also testified that she was less than three feet from Cole when she saw the gun. (*Id.*, p. 206).

Accordingly, even assuming that neither witness could identify a gun in the video, Cole was not prejudiced in light of this evidence. First, Cole does not show a reasonable probability that he would have succeeded on a motion for judgment of acquittal. When considering such a motion, the court must view the evidence in the light most favorable to the State. *See State v. Williams*, 742 So.2d 509, 511 (Fla. 1st DCA 1999) ("[A] court should not grant the motion [for judgment of acquittal] unless, when viewed in a light most favorable to the state, the evidence does not establish the prima face case of guilt." (citation omitted)). The evidence, taken in the light most favorable to the State, establishes that Cole possessed a gun during the offenses. Further, considering Zioerjen's testimony about the gun, Cole fails to show a reasonable probability that the jury's verdict would have been different even if the witnesses could not specifically identify a gun in the video. Accordingly, Cole has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.[4] Cole is not entitled to relief on Ground One.

---

[4] In his reply, Cole alleges that the state postconviction court failed to attach to its order portions of the record that refuted his claims. Cole may not raise a new claim in his reply. *Timson*, 518 F.3d at 874. Further, an allegation of a deficiency in the state postconviction proceedings is not cognizable on federal habeas review because it does not challenge the validity of the conviction. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009).
(continued...)

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. Cole's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Cole and to close this case.

3. Cole is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Cole "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Cole has not made this showing. Because Cole is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on June 25, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Armistar Cole
Counsel of Record

---

[4](...continued)